| | |
|---|---|
| MCMONAGLE, PERRI,<br>MCHUGH, MISCHAK & DAVIS P.C.<br>By: William M. Davis, Esquire<br>Attorney I.D. No. 93102<br>1845 Walnut St., 19th Floor<br>Philadelphia, PA  19103<br>(215) 981-0999 / Fax (215) 981-0977<br>wdavis@mpmpc.com | Attorney for Plaintiffs |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ESTATE OF ROLAND ALSTON,<br>SHERHONDA ALSTON<br><br>vs.<br><br><br>CORRECT CARE SOLUTIONS, LLC<br>1283 Murfreesboro Rd., Suite 500<br>Nashville, TN 37217<br>    and<br>MHM CORRECTIONAL SERVICES, INC.<br>    DBA MHM SOLUTIONS<br>1593 Spring Hill Road, Suite 600<br>Vienna, Virginia 22182<br>    and<br>CHADWICK BADORF<br>c/o MHM CORRECTIONAL<br>    SERVICES, INC.<br>1593 Spring Hill Road, Suite 600<br>Vienna, Virginia 22182<br>and c/o CORRECT CARE SOLUTIONS, LLC<br>1283 Murfreesboro Rd., Suite 500<br>Nashville, TN 37217<br>    and<br>EDITH SLOCUM-WILLIAMS<br>c/o MHM CORRECTIONAL<br>    SERVICES, INC.<br>1593 Spring Hill Road, Suite 600<br>Vienna, Virginia 22182<br>and c/o CORRECT CARE SOLUTIONS, LLC<br>1283 Murfreesboro Rd., Suite 500<br>Nashville, TN 37217<br>    and<br>MCKINNON SHELBY | CIVIL ACTION<br><br><br><br><br>JURY TRIAL DEMANDED<br><br><br><br><br><br><br><br>CIVIL ACTION NO. |

| | |
|---|---|
| c/o MHM CORRECTIONAL | : |
|     SERVICES, INC. | : |
| 1593 Spring Hill Road, Suite 600 | : |
| Vienna, Virginia 22182 | : |
| and c/o CORRECT CARE SOLUTIONS, LLC | : |
| 1283 Murfreesboro Rd., Suite 500 | : |
| Nashville, TN 37217 | : |
|     and | : |
| **WAYNE POPOWSKI** | : |
| c/o MHM CORRECTIONAL | : |
|     SERVICES, INC. | : |
| 1593 Spring Hill Road, Suite 600 | : |
| Vienna, Virginia 22182 | : |
| and c/o CORRECT CARE SOLUTIONS, LLC | : |
| 1283 Murfreesboro Rd., Suite 500 | : |
| Nashville, TN 37217 | : |
|     and | : |
| **BRIAN SCHNIEDER** | : |
| c/o MHM CORRECTIONAL | : |
|     SERVICES, INC. | : |
| 1593 Spring Hill Road, Suite 600 | : |
| Vienna, Virginia 22182 | : |
| and c/o CORRECT CARE SOLUTIONS, LLC | : |
| 1283 Murfreesboro Rd., Suite 500 | : |
| Nashville, TN 37217 | : |
|     and | : |
| **LAURA BANTA** | : |
| c/o MHM CORRECTIONAL | : |
|     SERVICES, INC. | : |
| 1593 Spring Hill Road, Suite 600 | : |
| Vienna, Virginia 22182 | : |
| and c/o CORRECT CARE SOLUTIONS, LLC | : |
| 1283 Murfreesboro Rd., Suite 500 | : |
| Nashville, TN 37217 | : |
|     and | : |
| **DR. LEE HANUSCHAK, MD** | : |
| c/o MHM CORRECTIONAL | : |
|     SERVICES, INC. | : |
| 1593 Spring Hill Road, Suite 600 | : |
| Vienna, Virginia 22182 | : |
| and c/o CORRECT CARE SOLUTIONS, LLC | : |
| 1283 Murfreesboro Rd., Suite 500 | : |
| Nashville, TN 37217 | : |

## **COMPLAINT - CIVIL ACTION**

Plaintiffs, The Estate of Roland Alston, and Sherhonda Alston, by and through the undersigned attorneys, McMonagle, Perri, McHugh, Mischak & Davis, P.C., herein complain of the above captioned Defendants, and state the following:

## JURISDICTION AND VENUE

1. Jurisdiction in this action is vested in this Court pursuant to 42 U.S.C. §1983.

2. The practices and conduct alleged herein occurred within the Eastern District of Pennsylvania wherein the Pennsylvania Department of Corrections governs and operates. Therefore, venue in this Court is proper pursuant to 28 U.S.C. §§1331 and 1343.

## PARTIES

3. Decedent, Roland Alston, and Plaintiff through the Estate of Roland Alston, was an adult individual last residing at SCI Graterford, Graterford, Pennsylvania, before his death on March 28, 2018.

4. Plaintiff, Sherhonda, is an adult individual residing at 1432 S. 15th St., Philadelphia, PA 19146 and was the daughter of Roland alston until the date of his death.

5. Defendant Correct Care Solutions, LLC ["CCS"] is a corporation or other jural entity located at 1283 Murfreesboro Rd., Suite 500, Nashville, TN 37217.

6. Defendant CCS has a contract to provide health care and health care services to inmates and detainees within the Pennsylvania Department of Corrections, including but not limited to providing nursing staff, administrative staff and social workers.

7. Defendant MHM Correctional Services, Inc., DBA MHM Solutions ["MHM"] is a corporation or other jural entity located at 1593 Spring Hill Road, Suite 600, Vienna, Virginia 22182. MHM has a principal place of business, among other places, located at 645 North 12th Street, Suite 101, Lemoyne, Pennsylvania 17043.

3

8. Defendant MHM has a contract to provide mental health care and mental health care services to inmates and detainees within the Pennsylvania Department of Corrections, including but not limited to providing pharmacists, psychiatrists and certified registered nurse practitioners.

9. Defendant, Chadwick Badorf, provides mental health care and mental health care services to inmates and detainees within the Pennsylvania Department of Corrections, including Roland Alston.

10. Defendant, Edith Slocum-Williams, provides mental health care and mental health care services to inmates and detainees within the Pennsylvania Department of Corrections, including Roland Alston.

11. Defendant Dr. Lee Hanuschak, MD, is a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania who, at all times relevant hereto, provided medical/mental health/psychiatric care and treatment to Mr. Alston.

12. Defendant, McKinnon Shelby, provides mental health care and mental health care services to inmates and detainees within the Pennsylvania Department of Corrections, including Roland Alston.

13. Defendant, Wayne Popowski, provides mental health care and mental health care services to inmates and detainees within the Pennsylvania Department of Corrections, including Roland Alston.

14. Defendant, Brian Schnieder, provides mental health care and mental health care services to inmates and detainees within the Pennsylvania Department of Corrections, including Roland Alston.

15. Defendant, Laura Banta, provides mental health care and mental health care services to inmates and detainees within the Pennsylvania Department of Corrections, including Roland Alston.

16. At all times relevant hereto, Chadwick Badorf, Edith Slocum-Williams, Dr. Lee Hanuschak, McKinnon Shelby, Wayne Popowski, Brian Schnieder and Laura Banta were actual and/or ostensible agents and/or employees of CCS and/or MHM, and were acting within the course and scope of such agency and/or employment relationship while providing health care and/or mental health care services to Mr. Alston.

17. At all times material hereto, Chadwick Badorf, Edith Slocum-Williams, Dr. Lee Hanuschak, McKinnon Shelby, Wayne Popowski, Brian Schnieder and Laura Banta [Individual Defendants], were acting in their own right and also acting as authorized agents, employees and/or servants of CCS and/or MHM, and under the control or right of control of CCS and/or MHM.

18. CCS is liable for the acts and/or omissions of the above captioned Individual Defendants and/or its agents, servants, and/or employees under applicable legal theories of agency, master-servant, respondeat superior, and/or right of control.

19. MHM is liable for the acts and/or omissions of the above captioned Individual Defendants and/or its agents, servants, and/or employees under applicable legal theories of agency, master-servant, respondeat superior, and/or right of control.

## FACTS COMMON TO ALL COUNTS

20. Roland Alston had been an inmate in the Pennsylvania Department of Corrections since 1984.

21. Mr. Alston had been diagnosed with Depression NOS and Paranoid Personality Disorder as early as 2006, if not earlier.

22. Mr. Alston had been treated for chronic depression with both counselling and medications, such as Seroquel, from as early as 2006, if not earlier.

23. Mr. Alston was transferred to SCI Graterford in or around October 2006 and he remained there until his death on March 28, 2018.

24. Mr. Alston had made threats to harm himself on one or more occasions while an inmate at SCI Graterford.

25. Mr. Alston had attempted to harm himself on one or more occasions while an inmate at SCI Graterford.

26. Defendant Dr. Lee Hanuschak last saw, counseled and/or treated Mr. Alston on December 13, 2017.

27. Mr. Alston made multiple threats to harm himself to fellow inmates and staff of SCI Graterford and/or staff of Defendants CCS and MHM on March 26, 2018.

28. On March 26, 2018, Mr. Alston was seen by Defendants Chadwick Badorf and Edith Slocum-Williams for concerns regarding Mr. Alston's mental health. Mr. Alston presented with symptoms of depression, stating, amongst other things, that he felt "down and tearful all the time, he was sleeping only 2 to 3 hours a night, his appetite had gone downhill and he feels like someone took a weight and laid it on his heart." Mr. Alston reported that "sometimes he just wants to give up" and that he had thrown all of his photos and legal materials away. Mr. Alston stated that he was contemplating suicide two weeks prior and he was observed to be talking passively suicidal, stating "if he should take his life he doesn't want his loved ones to blame themselves."

29. Neither Defendant Badorf nor Defendant Slocum-Williams accessed Mr. Alston's mental health history or records after speaking with him on 3/26/2018.

30. Despite referring Mr. Alston to psychiatric personnel for a follow up consultation, both Defendant Badorf and Defendant Slocum-Williams returned Mr. Alston to his cell in the general population section of SCI Graterford, with no precautions being taken or made to monitor Mr. Alston in any way.

31. Defendant Slocum-Williams contacted Defendants Shelby, Popowski, Schnieder, Badorf and Banta regarding Mr. Alston's need for an emergent psychiatric referral.

32. Mr. Alston was not seen by any member of the psychology or psychiatric departments of SCI Graterford at any later point on 3/26/2018, 3/27/2018 or 3/28/2018.

33. Defendant Dr. Hanuschak did not treat, monitor or consult with Mr. Alston in any way after Mr. Alston's visit with Defendant Slocum-Williams on 3/26/2018.

34. On 3/27/2018 and 3/28/2018, Defendants knew or should have known all of the above facts pertaining to Mr. Alston, as all were contained in records in the possession of SCI Graterford.

35. Mr. Alston was never placed on "suicide watch", nor was he placed in any housing that included supervision and/or direct checks on his well-being every fifteen minutes.

36. Mr. Alston was not placed in a special housing unit or cell, that would have allowed for close supervision and mental health services, despite his statements and diagnosis on 3/26/2018, his prior diagnosis of Depression NOS and Paranoid Personality Disorder, his statements of suicidal ideation on 3/26/2018 and history of prescription for Seroquel and prior suicide attempts.

37. Mr. Alston was not placed in a special housing unit that provided a suicide suit, blanket but no sheet and general provisions to prevent self-harm, despite his statements and diagnosis on 3/26/2018, his prior diagnosis of Depression NOS and Paranoid Personality Disorder, his statements of suicidal ideation on 3/26/2018 and history of prescription for Seroquel and prior suicide attempts.

38. Mr. Alston was not transitioned from suicide watch, to close supervision to general housing, all-the-while monitored by a mental health professional, to ensure that he was not a risk to harm himself, despite his statements and diagnosis on 3/26/2018, his prior diagnosis of Depression NOS and Paranoid Personality Disorder, his statements of suicidal ideation on 3/26/2018 and history of prescription for Seroquel and prior suicide attempts.

39. In addition to the above factors of prior suicide attempts, present suicidal ideation, prior prescription for psychiatric medication, Defendants knew or should have known that Mr. Alston was particularly vulnerable to suicide, because he had a documented diagnosis of Depression NOS and Paranoid Personality Disorder.

40. Defendants knew or should have known that not monitoring Mr. Alston and/or taking him out of general population and placing him on "suicide watch" and/or getting him immediate evaluation, treatment and/or medication from a psychiatrist, given all of the above present risk factors, placed Mr. Alston at an increased risk for suicide, as any lay person would reach this conclusion.

41. Due to all of the above factors, all of which Defendants knew or should have known, Defendants additionally knew or should have known that Roland Alston was particularly vulnerable to suicide, specifically between 3/25/2018 and 3/28/2018.

42. Additionally, Defendants were aware that Inmate Patrick Henry had committed suicide by hanging while in general population at SCI Graterford on 11/21/2017, after Mr. Henry presented many risk factors similar to Mr. Alston, and Defendants did nothing to treat, monitor or protect Mr. Henry, who was particularly vulnerable to suicide, from committing suicide.

43. Additionally, Defendants were aware that Inmate Arthur Phillips had committed suicide by hanging while in general population at SCI Graterford on 1/28/2018, after Mr. Phillips presented many risk factors similar to Mr. Alston, and Defendants did nothing to treat, monitor or protect Mr. Phillips, who was particularly vulnerable to suicide, from committing suicide.

44. Additionally, Defendants were aware that Inmate Isaac DeJesus had committed suicide by hanging while in general population at SCI Graterford on 2/17/2018, after Mr. DeJesus presented many risk factors similar to Mr. Alston, and Defendants did nothing to treat, monitor or protect Mr. DeJesus, who was particularly vulnerable to suicide, from committing suicide.

45. On March 28, 2018, Mr. Alston committed suicide by hanging himself in his prison cell, in general population, while incarcerated as an inmate at SCI Graterford.

46. At all relevant times hereto, Defendants were aware of, and recklessly and deliberately indifferent to, Mr. Alston's serious medical and mental health needs and the required evaluations, medication and monitoring that his numerous risk factors required for his safety.

47. At all relevant times hereto, Defendants were aware of, and recklessly and deliberately indifferent to, the excessive risk of not placing Mr. Alston on suicide watch.

48. At all relevant times hereto, Defendants were aware of, and were recklessly and deliberately indifferent to, the need for additional, meaningful, effective and/or different training, testing, rules, regulations, screening, policies, procedures, guidelines, and directives concerning

inmates with known mental health conditions, providing medications and placing inmates on suicide watch.

49. Specifically, Defendants were or should have been aware that additional, meaningful, effective and/or different training, testing, rules, regulations, screening, policies, procedures, guidelines, and directives were necessary in order for Defendants MHM and CCS' staff, and/or DOC staff working under direction of Defendants, to understand and appreciate the importance and need to evaluate, address and treat inmates' mental health needs while incarcerated at SCI Graterford.

50. Specifically, Defendants were or should have been aware that additional, meaningful, effective and/or different training, testing, rules, regulations, screening, policies, procedures, guidelines, and directives were necessary in order for Defendants MHM and CCS' staff, and/or DOC staff working under direction of Defendants, to understand and appreciate the importance and need to closely monitor inmates who were particularly vulnerable to suicide.

51. The above described necessary additional and/or different training, testing, rules, regulations, screening, policies, procedures, guidelines, and directives, if in place prior to March 25, 2018, would have prevented Mr. Alston's suicide.

52. Mr. Alston's death was caused by the prolonged failure to treat or address his mental health needs through medication, supervision and monitoring to prevent self-harm.

53. Mr. Alston died while under the exclusive custody and control of the Pennsylvania Department of Corrections and the above named Defendants.

54. As a direct and proximate result of Defendants' conduct, which caused Mr. Alston's death, Plaintiffs are entitled to recover for damages.

## COUNT I – FEDERAL CIVIL RIGHTS CLAIM
**Plaintiffs v. Individual Defendants**

55. Plaintiffs incorporate the preceding paragraphs as if the same were set forth herein at length.

56. Chadwick Badorf, Edith Slocum-Williams, Dr. Lee Hanuschak, McKinnon Shelby, Wayne Popowski, Brian Schnieder and Laura Banta were acting under the color of state law while assigned to provide medical care and mental health care and services to Roland Alston. The conduct of these Defendants was intended to harm Mr. Alston and/or was recklessly and deliberately indifferent to the safety, bodily integrity, well-being and life of Mr. Alston, and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to Mr. Alston. This conduct was so egregious as to shock the conscience.

57. The conduct of Chadwick Badorf, Edith Slocum-Williams, Dr. Lee Hanuschak, McKinnon Shelby, Wayne Popowski, Brian Schnieder and Laura Banta, as set forth above, violated Mr. Alston's constitutional rights to be free from cruel and unusual punishment, and his rights to due process as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution, as remediable pursuant to 42 U.S.C. §1983.

## COUNT II – FEDERAL CIVIL RIGHTS CLAIMS
**Plaintiffs v. Correct Care Solutions, LLC and MHM Correctional Services, Inc.**

58. Plaintiffs incorporate the preceding paragraphs as if the same were set forth herein at length.

59. The violation of Mr. Alston's constitutional rights, Plaintiffs' damages, and the conduct of the Individual Defendants were directly and proximately caused by the deliberate indifference of CCS and MHM to the need for training, supervision, investigation, monitoring, and/or discipline with respect to the provision of specialist medical care and mental health care,

treatment and monitoring of correctional facility inmates, specifically those who were particularly vulnerable to suicide.

60. The violation of Mr. Alston's constitutional rights, Plaintiffs' damages, and the conduct of Individual Defendants were directly and proximately caused by CCS and MHM's encouragement, tolerance, ratification of, and/or deliberate indifference to, policies, practices, and/or customs of refusing, delaying, denying, or otherwise interfering with inmates' necessary treatment by medical specialists and mental health specialists.

61. The violation of Mr. Alston's constitutional rights, Plaintiffs' damages, and the conduct of Individual Defendants were directly and proximately caused by CCS and MHM's encouragement, tolerance, ratification of, and/or deliberate indifference to, policies, practices, and/or customs of refusing, delaying, denying, or otherwise interfering with the proper monitoring of inmates who were particularly vulnerable to suicide.

## **REQUESTED RELIEF**

62. As a direct and proximate result of the above violations of Roland Alston's civil rights, as set forth herein, Mr. Alston was caused to suffer the death described above.

63. Plaintiffs bring this action pursuant to the above violations of Decedent's rights and are entitled to recover for damages caused by such violations, through the Estate of Roland Alston, including but not limited to, Decedent's pain and suffering, loss of earnings and loss of future earning capacity.

64. Plaintiffs further bring this action pursuant to the above violations of Decedent's rights and are entitled to recover for damages caused by such violations, including but not limited to, expenses of estate administration and the loss of expected pecuniary contributions of the Decedent.

**WHEREFORE**, Plaintiffs demand judgment against Defendants upon the claims and causes of action stated above, in excess of $150,000, exclusive of interest and costs, which sum includes, but is not limited to:

a.  Damages and costs of suit recoverable under 42 U.S.C. §1983; and,

b.  All other damages and relief as is deemed necessary and equitable by the Court and/or jury presiding over this case.

Respectfully submitted,

MCMONAGLE, PERRI,
MCHUGH, MISCHAK & DAVIS, P.C.

By: _____
WILLIAM M. DAVIS, ESQUIRE
**Attorney for Plaintiffs**

**Dated: November 25, 2019**